**Donald JOHNSTON; Lola Lovina Johnston, Plaintiffs–Appellants,**

v.

**Captain R.B. HORNE, Commander Puget Sound Naval Shipyard, et al., Bremerton Metal Trades Council, a labor organization; John Doe, supervisor, and his Marital Community; International Association of Machinists and Aerospace Workers, Local Lodge 282, a labor organization, Defendants–Appellees.***

No. 86–3956.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 11, 1989.

Decided May 25, 1989.

As Amended on Denial of Rehearing and Rehearing En Banc Aug. 7, 1989.

---

* By order of the court, the motion to dismiss defendants-appellees Bremerton Metal Trades Council and International Association of Ma-

chinists and Aerospace Workers, Local Lodge 282, has been granted.

Mary Ruth Mann and Kenneth R. Shear, Seattle, Wash., for plaintiffs-appellants.

Charles Pinnell, Asst. U.S. Atty., and James D. Beback, Office of Gen. Counsel, U.S. Navy, Seattle, Wash., for defendants-appellees.

Before WRIGHT, TANG and WIGGINS, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Donald Johnston brought a number of claims arising from his employment at the Puget Sound Naval Shipyard.

I

The Shipyard hired him as a toolmaker in 1969. Although hearing impaired, he retained residual hearing and an ability to read lips which allowed him to communicate. He performed satisfactorily during his first five years at the Shipyard.

He failed in 1974 to obtain an outstanding performance award for those first five years and, after that, his productivity declined. He engaged in disruptive and sometimes dangerous behavior, violated shop rules repeatedly and became hostile and antagonistic toward peers and supervisors. A counselor and physicians at the

Shipyard dispensary noted his obsession with the failure to obtain the performance award.

Johnston's emotional state deteriorated to the point that he took sick leave in June, 1980. Returning to work on June 18th, the Shipyard required that he see a psychiatrist. He refused.

The Shipyard then requested Johnston's medical retirement. A psychiatrist determined that he suffered from chronic paranoia, rendering him totally and permanently disabled. A second psychiatrist confirmed this diagnosis. The Office of Personnel Management retired him on the basis of this mental disability. The Merit Systems Protection Board affirmed that decision.

Johnston filed charges with the Equal Employment Opportunity Commission alleging that the Shipyard violated the Rehabilitation Act by discriminating against him because of his handicap. He contended that the Shipyard, by failing to accommodate his deafness, caused his agitated emotional state. After the EEOC rejected his claim, he brought this action.

Johnston alleges that the Shipyard discriminated against him in violation of the Rehabilitation Act, retaliated against him because he filed an EEOC complaint, and violated the Privacy Act and the constitution. The district court found for the Shipyard on all claims, determining that he suffered from a paranoid state that prevented him from working. It dismissed his constitutional claims.

## II

Johnston brought a handicap discrimination claim against his federal employer alleging that it violated § 501 and § 504 of the Rehabilitation Act.

Before reviewing his claims, we consider if a private cause of action exists and if the district court had jurisdiction. A distinction exists between § 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 (1986), and § 504, 29 U.S.C.A. § 794 (West Supp. 1989) (hereafter referred to as § 791 and

1. 42 U.S.C. § 2000e–16(c) Employment by Federal Government (1983):

§ 794). Both prohibit discrimination on the basis of handicap. Section 791(b) obligates federal employers to provide reasonable accommodation for the handicapped and to develop and implement affirmative action plans for handicapped employees. *Carter v. Bennett*, 840 F.2d 63, 65 (D.C.Cir.1988); *Boyd v. United States Postal Serv.*, 752 F.2d 410, 412 (9th Cir.1985); *Gardner v. Morris*, 752 F.2d 1271, 1277–78 (8th Cir. 1985). Section 794, in contrast, prohibits the exclusion of "otherwise qualified individuals" from government activities or programs receiving federal funds "solely by reason of their handicap." *Mantolete v. Bolger*, 767 F.2d 1416, 1421 (9th Cir.1985).

We conclude that a private cause of action exists for the § 791 claim, but that the court was without jurisdiction to hear it and that no private cause of action exists for a federal employee against a federal employer under § 794. We affirm the district court.

### A. Section 791 Claim

Congress obligates federal employers under § 791(b) to develop and implement affirmative action plans for handicapped employees and provides under § 794a(a)(1) a private cause of action for violations. *Boyd*, 752 F.2d at 412–13. Section 791(b) states:

> Each department, agency and instrumentality ... in the executive branch shall ... submit to the Equal Employment Opportunity Commission ... an affirmative action program plan for the hiring, placement, and advancement of individuals with handicaps....

■ Section 794a(a)(1) makes the remedies, procedures and rights of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16 (1983), available to employees alleging a violation of § 791. Section 2000e–16(c) requires that a plaintiff bringing a discrimination claim name the appropriate head of the department, agency or unit within 30–days after receiving a final agency decision.[1] *Koucky v. Department of Navy,*

Within thirty days of receipt of notice of final action taken by a department, agency, or unit

820 F.2d 300, 301–02 (9th Cir.1987); *Cosgrove v. Bolger*, 775 F.2d 1078, 1081 n. 2 (9th Cir.1985); *Cooper v. United States Postal Serv.*, 740 F.2d 714, 715–16 (9th Cir.1984), *cert. denied*, 471 U.S. 1022, 105 S.Ct. 2034, 85 L.Ed.2d 316 (1985). This 30–day period is jurisdictional. *Cooper*, 740 F.2d at 716 (citing *Rice v. Hamilton Air Force Base Commissary*, 720 F.2d 1082, 1083 (9th Cir.1983)).

Johnston filed a complaint within the required 30–day period. The EEOC on September 21, 1982, issued a final decision on his Rehabilitation Act claims and he received that decision on October 18. He filed this complaint on November 17, 1982, "within thirty days of receipt of notice of final action taken ... by the Equal Employment Opportunity Commission." §§ 2000e–16(c).

■ He failed, however, to file a complaint within the statutory period naming the appropriate head of the department, agency or unit. He named Captain Horne, Commander of the Shipyard and not the Secretary of the Navy, who was the appropriate defendant. *See Koucky*, 820 F.2d at 302 (citing *Cooper*, 740 F.2d at 715–16).

Johnston discovered his error after the 30–day period expired and moved under Fed.R.Civ.P. 15(c) to amend his complaint to name the appropriate defendant, the Secretary of the Navy. Rule 15(c) governs the relation back of amendments to pleadings.

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment that party (1) has received such notice of the institution of the action that the par-

ty will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

If a claim arises out of the same conduct, transaction or occurrence as the claim pleaded in the original complaint and if the notice requirements are met, a 15(c) amendment to add the Secretary of the Navy would relate back to the date of the original complaint. If the amendment relates back, Johnston within the 30–day period would have named the appropriate party and he could proceed with his action. *See Cooper*, 740 F.2d at 716.

■ Rule 15(c) cannot correct Johnston's error because the Secretary of the Navy did not, as required by 15(c), receive notice within the 30–day limitation period. The Rule applies only when the substituted party "within the period provided by law for commencing the action" received "notice of the institution of the action." *See Schiavone v. Fortune*, 477 U.S. 21, 29–31, 106 S.Ct. 2379, 2384–85, 91 L.Ed.2d 18 (1986) ("Timely filing of a complaint, and notice within the limitations period to the party named in the complaint, permit imputation of notice to a subsequently named and sufficiently related party."); *Koucky*, 820 F.2d at 302 (Secretary of Navy did not have notice within 30–day limit; therefore, plaintiff cannot take advantage of 15(c)); *Romain v. Shear*, 799 F.2d 1416, 1419 (9th Cir.1986), *cert. denied*, 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 840 (1987) (no government official served within 30–day period thus failure to name proper defendant cannot be cured by 15(c) amendment); *Cooper*, 740 F.2d at 717 (failure to notify substitute defendant of action until after statutory period had run precludes application of 15(c)).

■ We note that, if Johnston did not know whom to name, service of process on the United States Attorney or Attorney

referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission ... on a complaint of discrimination ... an employee ... if aggrieved by the final disposition of his complaint ... may file a

civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

General of the United States would have satisfed the notice provision of Rule 15(c).[2] *Cooper*, 740 F.2d at 717. He did not serve the United States Attorney until after the 30-day limitation period expired.

■ Johnston contends also that the Secretary of the Navy was not the only appropriate defendant. He argues that the Commander of the Puget Sound Naval Shipyard qualified as head of an agency under § 2000e–16(c) and that he, too, was a proper defendant. We disagree.

The Puget Sound Naval Shipyard is not an agency as defined in § 2000e–16(a). An "agency" is an "executive agency" defined as "an Executive Department, a Government corporation, [or] an independent establishment." 5 U.S.C. § 105. An "executive department" includes the eleven cabinet-level departments. 5 U.S.C. § 101. A government corporation means a corporation controlled by the United States government. 5 U.S.C. § 103. An independent establishment includes the General Accounting Office and an establishment in the executive branch that is not a military department. 5 U.S.C. § 104.

Because the Puget Sound Naval Shipyard does not for the purpose of § 2000e–16 qualify as an agency, the Commander cannot be the head of an agency nor can he be the proper defendant here. *See Honeycutt v. Long*, 861 F.2d 1346, 1349 (5th Cir.1988) (Army and Air Force Exchange Service not department, agency or unit; proper defendant Secretary of Army or Navy not Commander of AAFES); *Hancock v. Egger*, 848 F.2d 87, 88–89 (6th Cir.1988) (Internal Revenue Service not department, agency or unit; proper defendant Secretary of Treasury not Commissioner).

The district court was without jurisdiction to hear the § 791 claim.

**2.** The delivery or mailing of process to the United States Attorney, or the United States Attorney's designee, or the Attorney General of the United States, or an agency or officer who would have been a proper defendant if named, satisfies the requirement of clauses (1) and (2) hereof with respect to the United States or any agency or officer thereof to be brought into the action as a defendant.

**3.** The court in *Sisson v. Helms*, 751 F.2d 991 (9th Cir.), *cert. denied*, 474 U.S. 846, 106 S.Ct. 137, 88

**B. Section 794 Claim**

Section 794 provides:

No otherwise qualified handicapped individual with handicaps ... as defined in section 706(8) of this title, shall, solely by reason of his handicap ... be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

■ An "otherwise qualified handicapped individual" under § 794 may bring a private cause of action for handicap discrimination against an *activity* or *program that receives federal funds*. *Boyd*, 752 F.2d at 413 (citing *Kling v. County of Los Angeles*, 633 F.2d 876, 879 (9th Cir.1980)) (private plaintiff brought suit against federally assisted activity). Section 794 does not create a private cause of action for handicap discrimination against a *federal employer* by a *federal employee*. *Boyd*, 752 F.2d at 413–14. Section 791 is the exclusive remedy for handicap discrimination claims by federal employees.[3] *Id.*

We acknowledge a split among the circuits as to whether a federal employee may sue the federal employing agency under § 794. *See Morgan v. United States Postal Serv.*, 798 F.2d 1162, 1165–66 (8th Cir. 1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987) (answering affirmatively); *Smith v. United States Postal Serv.*, 742 F.2d 257, 259–60 (6th Cir. 1984); *Prewitt v. United States Postal Serv.*, 662 F.2d 292, 304 (5th Cir.1981); *but see Johnson v. United States Postal Serv.*, 861 F.2d 1475, 1478 (10th Cir.1988) (§ 791 exclusive remedy); *McGuinness v. United States Postal Serv.*, 744 F.2d 1318, 1321 (7th Cir.1984). *See also Milbert v. Koop*, 830 F.2d 354, 357 (D.C.Cir.1987) (not deciding the question).

L.Ed.2d 113 (1985), allowed a federal employee to bring an action against a federal employer. It did not, however, address the question of whether a federal employee may bring a claim under § 794 against a federal employer. To the extent that *Sisson* contradicts *Boyd*, we reject it. To the extent that *Sisson* lays out the *prima facie* case for an employee of an activity or program receiving federal assistance, it remains binding.

We, however, have stated:

[I]t is unlikely that Congress, having specifically addressed employment of the handicapped by federal agencies (as distinct from employment by recipients, themselves nonfederal, of federal money) in section 501 [§ 791], would have done so again a few sections later in section 504 [§ 794].

*Boyd,* 752 F.2d at 413 (citing *McGuinness,* 744 F.2d at 1321). Although *Boyd* and most of the cases deciding this question find that § 791 is the exclusive remedy for an employee alleging handicap discrimination by the Postal Service, we hold that a federal employee, like Johnston, may not under § 794 sue the federal employing agency. *See* 752 F.2d at 413. If Postal Service employees, mentioned specifically in § 794, may not sue, it follows that federal employees may not.[4]

Johnston has no cause of action under § 794.[5]

### III

Johnston alleges that the Shipyard retaliated against him by retiring him after he filed an EEOC complaint. To establish a *prima facie* case of retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–3(a), a plaintiff must show that: (1) he engaged in activity protected by Title VII; (2) the employer made an adverse employment decision; and (3) a causal connection existed between the two. *Yartzoff v. Thomas,* 809 F.2d 1371, 1375 (9th Cir.1987).

The district court here found no causal connection between Johnston's EEOC complaint and his medical retirement. To show the requisite causal link, he must raise the inference that the EEOC complaint was the likely reason for his retirement. The court found that he was retired because of his paranoia. We do not disturb this finding. *See Cohen v. Fred Meyer, Inc.,* 686 F.2d 793, 793 (9th Cir. 1982).

### IV

Johnston alleges that the Shipyard violated the Privacy Act of 1974. 5 U.S.C. § 552a (1982). He contends first that it failed to maintain and distribute accurate records. An agency must maintain records that are accurate, relevant, timely and complete, § 552a(e)(5),[6] and prior to disseminating any record the agency must assure that it is accurate, complete, timely and relevant for its purpose. § 552a(e)(6).[7] *Edison v.*

---

4. The legislative history supports our conclusion that a federal employee does not have a cause of action against a federal employer. Congress amended recently 29 U.S.C. § 794 (West Supp. 1989) by defining "program or activity." That definition does not refer to federal employers or employees but only to "programs or activities" to "which is extended Federal financial assistance." The legislative history indicates that the purpose of the amendment was "to make clear that discrimination is prohibited throughout entire agencies or institutions if any part receives Federal financial assistance." *See* S.Rep. No. 64, 100th Cong., 2d Sess., 2 *reprinted in* U.S. Code Cong. & Admin.News 3, 6. Representative Vanik stated that the amendment would "insure equal educational and employment opportunities for the handicapped by making discrimination illegal in *federally assisted program activities.*" *Id.* at 8 (citing 118 Cong.Rec. 526) (emphasis added).

5. Even if he had a cause of action, it would be barred for the same reasons that his claim under § 791 is barred. We observe that § 794, in contrast to § 791, incorporates the remedies, procedures and rights of Title VI, 42 U.S.C. § 2000d, not 42 U.S.C. § 2000e–16(c). § 794a(a)(2). If § 794 offered Johnston an al-

ternative remedy, he could argue that the 30-day limitation of § 2000e–16(c) which applied to § 791 claims did not apply to his § 794 claim. He could then fulfill the notice provision of Rule 15(c), having served the United States Attorney within the longer limitation period and proceed with this action.

We would, if a § 794 claim were allowed, read into it the same procedural requirements of § 2000e–16(c) that apply to § 791. *See Boyd,* 752 F.2d at 413. This would be in accord with circuits that allow a federal employee under § 794 to bring an action against a federal employer, for they hold that § 2000e–16(c) procedural constraints apply to a plaintiff bringing an action under § 794. *See Morgan,* 798 F.2d at 1165; *Smith,* 742 F.2d at 260, 262; *Prewitt,* 662 F.2d at 304.

6. Section 552a(e)(5) states: "Each agency that maintains a system of records shall maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual."

7. Section 552a(e)(6) states: "[P]rior to disseminating any record about an individual to any

*Department of the Army,* 672 F.2d 840, 842–43 (11th Cir.1982). An agency need not keep perfect records but must act reasonably to assure their accuracy. *Id.* If it fails to meet this record keeping obligation, a person may recover actual damages resulting from the adverse determination based on the record. § 552a(g)(1)(C), (g)(4); *Hewitt v. Grabicki,* 794 F.2d 1373, 1377 (9th Cir.1986). The complaining party has the burden of proving a violation. *Edison,* 672 F.2d at 842.

The plaintiff must show, first, that a violation of § 552a(e)(5) or (6) proximately caused the adverse effect; second, that the agency failed intentionally or willfully to maintain records as required; and third, that he suffered actual damage. § 552a(g)(1)(c), (4); *White v. Office of Personnel Management,* 840 F.2d 85, 87 (D.C. Cir.1988); *Dickson v. Office of Personnel Management,* 828 F.2d 32, 37 (D.C.Cir. 1987).

We have not defined previously a "willful or intentional" violation of the Privacy Act. The legislative history states:

> In a suit for damages, the [compromise] amendment reflects a belief that a finding of willful, arbitrary or capricious action is too harsh a standard of proof for an individual to exercise the rights granted by this legislation. Thus the standard for recovery of damages was reduced to 'willful or intentional' action by an agency. *On a continuum between negligence and the very high standard of willful, arbitrary, or capricious conduct, this standard is viewed as only somewhat greater than gross negligence.*

*Andrews v. Veterans Admin. of U.S.,* 838 F.2d 418, 424 (10th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 56, 102 L.Ed.2d 35 (1988) (citing *Analysis of House and Senate Compromise Amendments to the Federal Privacy Act, reprinted in* 120 Cong. Rec. 40405, 40406 (1974) (emphasis added)).

Some courts require something more than gross negligence. *See, e.g., White,* 840 F.2d at 87; *Andrews,* 838 F.2d at 425; (clearly requires conduct amounting to

more than gross negligence); *Moskiewicz v. United States Dept. of Agriculture,* 791 F.2d 561, 564 (7th Cir.1986) ("Evidence of conduct which would meet a greater than gross negligence standard, focusing on evidence of reckless behavior and/or knowing violation of the Act on the part of the accused, must be advanced …").

Other courts seem to equate gross negligence with "willful or intentional." *See, e.g., Chapman v. National Aeronautics and Space Admin.,* 736 F.2d 238, 243 (5th Cir.) (per curiam) (equating gross negligence with willfulness), *cert. denied,* 469 U.S. 1038, 105 S.Ct. 517, 83 L.Ed.2d 406 (1984); *Albright v. United States,* 732 F.2d 181, 189 (D.C.Cir.1984).

They, however, grapple with and elaborate on the definitions. *See, e.g., Laningham v. United States Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987) (intentional or willful means "so 'patently egregious and unlawful' that anyone undertaking the conduct should have known it 'unlawful' ") (quoting *Wisdom v. Department of Housing & Urban Dev.,* 713 F.2d 422, 425 (8th Cir.1983)), *cert. denied,* 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 678 (1984); *Albright,* 732 F.2d at 189 (willful or intentional requirement met "by committing the act without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act."); *Moskiewicz,* 791 F.2d at 564 (7th Cir.1986) (acts meeting greater than gross negligence standard require evidence of "reckless behavior and/or knowing violations of the Act."); *Chapman,* 736 F.2d at 243 (5th Cir.1984) (court looks for evidence of "unlawful intent" or "ulterior motive"); *Wisdom,* 713 F.2d at 425 (willful or intentional means "patently egregious and unlawful").

 We find that the term "willful or intentional" requires conduct amounting to more than gross negligence but do not elaborate on definitions of gross negligence.

Johnston contends that in June 1980, Priddy, a Labor Relations Specialist at the Shipyard, compiled a background briefing for the purpose of having Johnston retired

person other than an agency, [must] make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agencies purposes."

involuntarily. He contends that this briefing violated the Privacy Act because it was inaccurate, untimely and incomplete. The district court found that he could not prevail because any inaccuracies or admissions in the briefing were not willful or intentional. We review for clear error. *Chapman,* 736 F.2d at 242 (intent question of fact); *Albright,* 732 F.2d at 190.

We find no evidence of conduct that we could call greater than gross negligence. Priddy prepared the briefing in June, 1980, immediately after the Shipyard requested that Johnston obtain a psychiatric exam. He prepared it for use by examining physicians. In it, he provided accounts of Johnston's aberrant behavior that he had obtained from a presentation given by Johnston's supervisor, Mills, who, at the time he gave the presentation, believed Johnston was competent. The district court found that testimony supported the facts in the briefing.

Johnston contends next that the Shipyard failed to provide him with the notes of his supervisor, Mills. The Act requires an agency to permit any person, upon request, to gain access to his record or any information about him contained in the system. § 552a(d)(1); § 552a(g)(1)(B), (4); *Boyd v. Secretary of the Navy,* 709 F.2d 684, 686 (11th Cir.1983), *cert. denied,* 464 U.S. 1043, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984). A record is "any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history...." § 552a(a)(4). A system of records is a "group of any records under the control of any agency from which information is retrieved by the name of the individual or some other identifying particular...." § 552a(a)(5).

A supervisor's private notes generally are not subject to the requirements of the Act, *Bowyer v. United States Dept. of Air Force,* 804 F.2d 428, 431 (7th Cir.1986) (citing *Boyd,* 709 F.2d at 686), but can become subject to the Act if an agency uses them to make decisions that concern a person's employment status. *Bowyer,* 804 F.2d at 431; *Boyd,* 709 F.2d at 686.

The district court here found that the Shipyard did not use these notes when making its decision to retire Johnston. It found that they were Mills' personal notes and that he destroyed them before the Shipyard decided to retire Johnston. Johnston could not show a causal connection between the notes and the Shipyard's decision to retire him because they had been destroyed before he was retired. *See Hewitt,* 794 F.2d at 1379; *Edison,* 672 F.2d at 845.

V

On June 18, 1980, Johnston returned to the Shipyard from a six-day medical leave. One of his supervisors, McNellis, sent him to the personnel office, where he was told not to return to work until he had submitted to a psychiatric evaluation and been found fit for duty. Instead of leaving the Shipyard grounds immediately as required by security regulations, Johnston went to the EEOC office to file a complaint in protest of the suspension. McNellis observed Johnston on his way to the EEOC office, located in a restricted area of the Shipyard to which Johnston knew he had no permission to enter. McNellis summoned two security guards who confronted Johnston as he sat in the EEOC office, confiscated his papers, and escorted him from the Shipyard. Johnston asserts that these actions amounted to unlawful arrest, search, and seizure.

A. Fifth Amendment Due Process

Johnston claims that the personnel office failed to give notice or to provide a hearing before it suspended him pending psychiatric evaluation. He asserts that this procedure violated his Fifth Amendment right to due process and that he is entitled to damages under *Bivens v. Six Known Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

"[A] federal civil servant can press a *Bivens* action only if the constitutional violations he claims cannot be adequately addressed under the regulatory scheme that governs the relationship between the government and its employees." *Schowengerdt v. General Dynamics Corp.,* 823

F.2d 1328, 1339 (9th Cir.1987). The existence of statutory and administrative procedures for addressing complaints of improper personnel action bars Johnston's claim. *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983).

Johnston's alleged constitutional violations could have been addressed adequately under the regulatory scheme provided for in 5 U.S.C. §§ 7701 and 7703 (1980 and Supp.1989). As provided by these statutes, Johnston in fact exercised his right to administrative review and brought his claim before both the Office of Personnel Management and the Merit Systems Protection Board. Following exhaustion of his administrative remedies, he also had a right to judicial review under 5 U.S.C. § 7703. His *Bivens* action is therefore barred.

### B. Fourth Amendment Search and Seizure Claim

Johnston also claims a violation of his Fourth Amendment rights and asserts a cause of action under *Bivens*, 403 U.S. 388, 91 S.Ct. 1999. He names McNellis and the two security guards as defendants. The district court correctly granted the government's motion to dismiss.

■■■■■ Because Johnston failed to serve McNellis, the court lacked jurisdiction. Johnston named McNellis in his first amended complaint and served that complaint on the U.S. Attorney. Johnston sought damages from McNellis in his individual capacity. A *Bivens* action can be maintained against a defendant only in his or her individual capacity. *Daly–Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987). Where the plaintiff seeks money damages from a federal official in his individual capacity, he must effect personal service under Fed.R.Civ.P. 4(d)(1). *Id.* This Johnston failed to do.

■■■■■ Johnston's claim against the security guards is barred by the statute of limitation. In *Bivens* actions, we borrow the state statute that applies to analogous state law causes of action. *Marshall v. Kleppe*, 637 F.2d 1217, 1224 (9th Cir.1980). This circuit has not yet decided which Washington state statute of limitation applies to *Bivens* claims. We have found that California's residual statute of limitation, which covers all actions "not hereinbefore provided for," applies to *Bivens* actions arising in that state. *See Gibson v. United States*, 781 F.2d 1334, 1342 (9th Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987) (applying Cal.Civ.P.Code § 343 (West 1982)). Washington has a similar catch-all provision. Wash.Rev.Code § 4.16.080(2) (1988). We hold that this three-year statute applies to *Bivens* claims arising in Washington.

Johnston's cause of action accrued on June 18, 1980, when the security guards detained him and removed him from the Shipyard. *See Norco Constr., Inc. v. King County*, 801 F.2d 1143, 1145 (9th Cir.1986). The statute prescribed by Wash.Rev.Code § 4.16.080(2) ran on June 18, 1983. Johnston filed his original complaint on November 17, 1982. However, he failed either to plead the Fourth Amendment claim or to name the two security guards in that complaint. He did not name the security guards as defendants until October 17, 1983, when he filed a second amended complaint.

■■■■■ An amended complaint, though filed after the statute has run, may be timely if it states a cause of action based on facts pleaded in the original complaint. Fed.R.Civ.P. 15(c). Because Johnston failed to plead the facts giving rise to the Fourth Amendment claim in his original complaint, the second amended complaint does not relate back under Rule 15(c). The claim against the security guards is time-barred.

### VI

We DISMISS Johnston's § 791 Rehabilitation Act and retaliation claims for lack of jurisdiction and DISMISS his § 794 claim because no cause of action exists. We AFFIRM the judgment in favor of defendants on the Privacy Act claim and AFFIRM the dismissal of his constitutional claims.