Edward A. HARRY, Plaintiff,

v.

UNITED STATES POSTAL SERVICE, Defendant.

No. 3:CV 92–1372.

United States District Court, M.D. Pennsylvania.

Sept. 29, 1994.

Donald H. Brobst, Joseph G. Ferguson, Rosenn, Jenkins & Greenwald, Wilkes Barre, PA, for plaintiff.

James A. Gibbons, Andrew S. Quinn, Asst. U.S. Atty., Scranton, PA, for defendant.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

Presently before the Court is Defendant's Motion for Summary Judgment (Doc. No. 15) to which Plaintiff has responded and Plaintiff's Motion for Summary Judgment on the issue of liability (Doc. No. 18). The Defendant has responded to the motion. We have carefully reviewed the proffered arguments. For the reasons stated below, we grant the Defendant's Motion for Summary Judgment.

### *PROCEDURAL HISTORY*

On September 30, 1992, Plaintiff initiated this Privacy Act wrongful disclosure action against his employer, United States Postal Service (hereinafter "USPS") and the Postmaster General. On April 19, 1993 Plaintiff filed an amended complaint seeking relief for violations of the Privacy Act of 1974, 5 U.S.C.

§ 552a *et seq.* (1977). Plaintiff claims the violations were in three forms: (1) an intentional failure to maintain his records; (2) intentional disclosure of confidential information; and (3) failing to respond to request for documents made pursuant to the Privacy Act.

On July 21, 1993, Defendant filed a Motion for Summary Judgment alleging, inter alia, that Plaintiff's claims should be dismissed for failure to meet the statute of limitations and that the Plaintiff's complaints are not actionable under the Privacy Act. (Doc. No. 15). Before responding to the Defendant's motion, the Plaintiff then filed a Motion for Summary Judgment on the issue of liability. (Doc. No. 18). On August 9, 1993, Plaintiff filed his opposition to Defendant's Motion for Summary Judgment. (Doc. No. 21). Shortly thereafter, on August 23, 1993, Defendant's reply brief to Plaintiff's motion was submitted. (Doc. No. 23).

### BACKGROUND

On June 27, 1988, Harry and the USPS entered into a settlement agreement in a hearing before Mary M. Cleland, EEOC Administrative Law Judge. In return for a cash settlement and an adjustment of annual leave, Harry agreed to withdraw all EEO complaints, grievances, NLRB claims, and Privacy Act complaints up through the date of the agreement. Both parties agreed to keep the terms of the settlement confidential. The ALJ noted that "the agency has agreed not to disclose to anyone the terms of the agreement except for those individuals necessary to accomplish the terms of the settlement agreement; in other words, to pay (Harry the sum of money . . . and to credit . . . (his)) annual leave. . . ." *See* D–1 Statement of Material Facts.

On December 8, 1988, Plaintiff Harry made a request to Tom Bly, Postmaster of the Hazleton office of the USPS, to review his personnel and medical records.[1] (Doc. No. 10, amended complaint at ¶ 8). On January 26, 1989, Plaintiff Harry examined his files in the Hazleton Post Office. He claims that during the review he discovered errors in their maintenance. Specifically, he contends that certain records were incorrectly purged and others, which he had never seen before, were wrongfully retained. In addition, Harry found a problem with the file cabinet being unlocked in an unrestricted area of the post office. Subsequently Mr. Bly placed all files pertaining to Harry in a locked cabinet in his office. Nevertheless, on April 1, 1988, Harry filed a formal EEOC complaint claiming handicap discrimination and the improper storage and filing of his files. In response, on May 5, 1989, the Postal Service issued a final agency determination denying his claims.

In granting a request to reopen on January 24, 1990, the EEOC upheld the USPS decision to deny the discrimination action on the ground that EEO contact was untimely, but ordered the USPS to consider the Privacy Act claim, since the issue was not addressed in the agency's determination and was timely raised. The EEOC placed the date when Harry discovered that documents concerning him were allegedly purged and misfiled as January 29, 1989.

On August 14, 1990 and October 9, 1990, Harry entered into settlement agreements with the USPS, in which he withdrew his Privacy Act claims (his EEO complaint). Harry then proceeded to contact Congressman Paul Kanjorski by letter dated June 13, 1990. The letter concerned the Privacy Act violations he believed the Postal Service committed. It specifically requested the Congressman's "help and intercession" in obtaining a "full and independent investigation into the reluctance of the USPS and the U.S. Attorney's Office to investigate this Privacy Act Complaint." (Doc. No. 10, Amended Complaint).

On April 3, 1991, Congressman Kanjorski wrote a letter to Charles R. Clauson, inspector general of the USPS asking him to investigate Harry's allegations. (Doc. No. 10, amended complaint, Exh. "E"). In a letter dated April 26, 1991, Mr. Clauson indicated

---

**1.** Plaintiff requested review of his medical files in an effort to prepare a claim with the Occupation- al Safety and Health Administration.

that Julie Tagen from the Subcommittee on Human Resources had been contacted and that a more complete response would be forthcoming. *See* D–3, Statement of Material Facts. Ms. Tagen provided more information to Mr. Clauson in a letter dated April 23, 1992. Her letter contained a list of facts from the mid 1970's detailing the background of Harry's claims of both handicap discrimination and the mismanagement of his files.

Although Plaintiff seems to take issue with how thorough the investigation was, the Inspection service did initiate an investigation and on June 25, 1991, Barbara Burnhauser, a postal inspector did submit a report to Clauson. Attached to her final report was a copy of an EEO Settlement Agreement between Harry and USPS.

Following the receipt of Ms. Tagen's letter and Burnhauser's report, Clauson wrote to Congressman Kanjorski again on September 6, 1991. In his letter Clauson stated that in the 1988 settlement, Harry had agreed to withdraw all grievances, Privacy Act claims and congressional inquiries. He further indicated that additional settlements were reached on August 14 and October, 1990. He went on to describe, according to the accounts of the different postmasters, the maintenance of Harry's files. (Doc. No. 10, amended complaint, Exh. "F").

On October 29, 1991, Harry wrote to Joseph E. Stokes, Manager of EEOC Complaint Processing in the USPS Harrisburg Division complaining that the unwarranted disclosure of the terms of the 1988 Settlement Agreement constituted a violation of the Privacy Act. Congressman Kanjorski also wrote to Clauson to this effect on February 5, 1992. (Doc. No. 10, amended complaint, Exh. "I"). Clauson responded to the Congressman on June 8, 1992. In his letter, Clauson provided additional details pertaining to the maintenance of Harry's files, and indicated that Harry had authorized the disclosure of some of the terms of the 1988 settlement agreement. (Doc. No. 10, amended complaint, Exh. "J"). In an attempt to disprove Defendant's assertion that he authorized disclosure, Plaintiff Harry, on June 8, 1992, sent a request to Raymond Monroe, Division Manager of the USPS asking for copies of his files and specifically requesting any document indicating his authorization of the disclosure of the confidential settlement terms. *See* Exh. "A" to Harry Declaration.

## STANDARD OF LAW

Federal Rule of Civil Procedure 56(c) requires that we render summary judgment "... forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–8, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

Accordingly, in order for a moving party to prevail on a motion for summary judgment, the party must show two things: (a) that there is no genuine issue as to any material fact, and (b) that the party is entitled to judgment as a matter of law. F.R.C.P. 56(c); See 7 Wright & Miller, *Federal Practice and Procedure;* Civil Section 2712. A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the law applicable to the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Levendos v. Stern Entertainment Inc.,* 860 F.2d 1227, 1233 (3d Cir. 1988). An issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party.[2] *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514–15; *Hankins v. Temple University,* 829 F.2d 437, 440 (3d Cir.1987); *Equimark Commercial Finance Co. v. C.I.T. Financial*

---

2. In this sense, the summary judgment standard mirrors that which applies to a directed verdict under Federal Rule of Civil Procedure 50(a), i.e., that the trial judge must direct a verdict if, under the governing law, there can be only one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. at 2511.

*Services Corp.,* 812 F.2d 141, 144 (3d Cir. 1987).

■ In determining whether an issue of material fact does exist, all inferences must be drawn against the moving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3d Cir.1988); 6 J. Moore, Moore's Federal Practice ¶ 56.04[2]. In order to stave off a summary judgment motion, however, the non-moving party may not rest on the bare allegations contained in his or her pleadings. Once the moving party has satisfied its burden of identifying evidence which demonstrates an absence of a genuine issue of material fact, *see Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988), the nonmoving party is required by Federal Rule of Civil Procedure 56(e)[3] to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corporation v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial. *Equimark, supra* at 144. If, however, "the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Advisory Committee Notes to Fed.R.Civ.P. 56(e) (1963 Amend.).

### DISCUSSION

This Court construes Plaintiff's complaint as one that sets forth three identifiable claims. First, Plaintiff complains that his personnel files, once kept at the Hazleton Post Office but now residing in Harrisburg, were improperly maintained. Specifically, he contends that certain files are missing. Additionally, he avers that certain other notes and files were improperly added to his file and that we are to assume that the contents of those notes were damaging in that they were inaccurate or completely false. Next, in an attempt to rectify his situation and right his perceived wrongs, Plaintiff claims that he stumbled upon an additional violation of his privacy rights. Plaintiff alleges wrongful disclosure of a confidential settlement agreement reached between himself and the USPS Labor Relations. This disclosure, Plaintiff claims, is violative on two levels. First, Harry claims that the Labor Relations was not at liberty to release the settlement agreement to the Postal Inspection Service and secondly, that the Inspection Service improperly disclosed portions of the agreement's terms to Congressman Paul Kanjorski, the individual from whom Harry sought intervention. We will discuss these claims seriatim.

### I. *Improper Maintenance of Files*

■ Defendant states, inter alia, that even when viewing Plaintiff's complaint in the most favorable light, his claims still do not make out a cause of action under the Privacy Act. Defendant contends, and we acknowledge, that pursuant to the Privacy Act, the Plaintiff must show both that his records were incorrectly maintained and that he suffered an adverse determination as a result of the wrongful maintenance of his files.[4] *Rose v. U.S.,* 905 F.2d 1257, 1259 (9th Cir.1990); *Johnston v. Horne,* 875 F.2d 1415, 1422 (9th Cir.1989); *Hubbard v. EPA,* 809 F.2d 1, 6

3. In relevant part, Rule 56(e) states:
When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

4. Under the Privacy Act,

"Whenever any agency fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual (the individual may bring a civil action against the agency)."
5 U.S.C. § 552a(g)(1)(C).

(D.C.Cir.1986). In addition, Defendant contends that Plaintiff has failed to state a serious claim for damages. We find it unnecessary, however, to inquire as to whether the aforementioned standards were met or, if in the affirmative, whether the merits ultimately warrant a particular determination because specific undisputed facts demand that this action fall to the Statute of Limitations.[5]

■ The Courts have consistently held that the limitations period commences when the Plaintiff should have known about the improper file maintenance, *Shannon v. General Elec. Co.*, 812 F.Supp. 308 (N.D.N.Y. 1993); *Bergman v. United States*, 751 F.2d 314 (10th Cir.1984); *DiLiberti v. v. United States*, 817 F.2d 1259 (7th Cir.1987); *Englerius v. Veterans Admin.*, 837 F.2d 895 (9th Cir.1988), or actually discovered the records' inaccuracies. *Akutowicz v. United States*, 859 F.2d 1122, 1126 (2nd Cir.1988). Although the exact date of when the Plaintiff should have known, is unclear [6], the date of the actual discovery is sterling clear.

According to Plaintiff Harry's own statements, which were accepted by the EEOC in its granting of the Request to Reopen and reiterated by Harry when he was deposed, Harry discovered the problems with his files after a physical review of them on January 26, 1989, a full 32 months prior to the commencement of this litigation.[7] While being deposed, Plaintiff Harry specifically stated that he was aware of the problems with his files as early as January of 1989. (Harry Deposition at p. 16) ("That's when I became aware of the misfiling of my records and the missing records."). It is clear that Plaintiff Harry's cause of action under the Privacy Act is time-barred when calculated as of the date he reviewed his files.

Accordingly, since the case before us was not initiated until September 30, 1992, Plaintiff Harry has failed to satisfy the Statute of Limitations and his claims regarding improper maintenance of files must fall.

## II. Disclosures between Labor Relations and the Postal Inspection Service

■ Essentially, the Privacy Act prohibits the disclosure of records by an agency with-

---

**5.** The Privacy Act requires that litigation be brought:

"Within two years of when the cause of action arises, except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability ... the action may be brought at any time within two years after discovery by the individual of the misrepresentation."

5 U.S.C. § 552a(g)(5).

**6.** The fact that the date of when the Plaintiff should have first known of the files' irregularities is unascertainable is not fatal to the defense position. The true date, by logic, had to have been sometime before the Plaintiff had physical possession of the files. Thus, any other date prior to Plaintiff Harry's review of the files would have initiated the running and tolling of the statute's two year limitation *well before* the commencement of this suit. Nevertheless, we can discern from the record before us that the Plaintiff actually knew of the existence of his personnel files and possible irregularities as early as 1987. *See* Harry Deposition pp. 6–9 provided in pertinent part as follows:

Q: Can you describe how—can you connect any of these reactions to any particular violation or was it just the sum total?

A: Well, the records that were missing. I'm reflecting back on what I was put through from 1980—it's going back to 1986 actually. This all started mainly in 1987, when I was put on restricted sick leave. At that time I did not—I could not understand how I could be put on restricted sick leave, when I substantiated all absences of three days or more. I was issued a letter of warning at that time which took an adverse affect on me.

Q: So you are saying that your negative consequences are related to the missing documents?

A: Missing documents.

\* \* \* \* \* \*

Q: What kind of negative personnel action did you suffer, if any?

A: Well, the personnel actions that you are speaking of—this all started when I was put on restricted sick leave at that time. That was—

Q: Which was when?

A: In 1987. I'm relating these back to then because there had to be a reason for these records missing in order for him to give me a letter of warning and put me on restricted sick leave.

**7.** For Harry's confirmation of this date see: Doc. No. 21—Plaintiff's Brief in Support of Motion for Summary Judgement; Doc. No. 34—Plaintiff's Pre–Trial Memorandum; Doc. No. 36—Comprehensive Statement of Undisputed Facts; and Doc. No. 37—Deposition Transcript of Edward A. Harry.

out a written request by, or without the prior consent of, the individual to whom the record pertains. 5 U.S.C. § 552a(b) (Supp.1993). *See Quinn v. Stone,* 978 F.2d 126, 131 (3rd Cir.1992). However, this general prohibition against disclosure is subject to twelve specific and articulated exceptions, 5 U.S.C. § 552a(b)(1)-(12), one of which Defendant maintains precludes liability for the release of information from Labor Relations to the Inspection Service within the United States Postal Service. The exception, § 552a(b)(1), allows for disclosures "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties."

In the performance of his duties, Mr. Charles Clauson, Inspector General, responding to the Congressman's letter asking for an investigation, and acting on behalf of the Inspection Service requested information on Harry's employment with the Postal Service, including the agreement that in part settled prior Privacy Act complaints by Harry. That such information was released from one internal subdivision of the Postal Service to another does not seem unreasonable when considering that those individuals within the Inspection Service were conducting an investigation and therefore had a need for the records in the performance of their duties.

III. *Disclosure from the Inspection Service to Congressman Kanjorski*

▪ Plaintiff Harry avers that the Defendant has violated the Privacy Act by wrongfully disclosing information contained in his files, specifically, a portion of his 1988 Settlement Agreement.[8] The Defendant Postal Service claims that although excerpts of content of certain documents regarding Harry's employment history were provided to Congressman Kanjorski, the Privacy Act interposes a complete bar to suit as all responses made in an effort to address congressional

intervention are permissible under defined and published routine use exceptions.

The Privacy Act exempts disclosures for "routine uses" which would otherwise violate the Act. § 552a(b)(3) (Supp.1993). The statute states that identification of all routine uses must be published annually in the Federal Register "including the categories of users and the purpose of such use." 5 U.S.C. § 552a(e)(4)(D) (Supp.1993). "The term 'routine' means, with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected." 5 U.S.C. § 552a(a)(7) (Supp.1993).

One of the routine uses identified by the Postal Service in the Federal Register states that "[d]isclosure may be made to a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the prompting of that individual." 54 Fed.Reg. 43654 (1989).

▪ We are inclined to agree with Defendant's contention that the plain language of the routine use set forth in the Federal Register (54 Fed.Reg. 43654, Part 2, Sec. E, Oct. 26, 1989) applies to all reasonable responses to congressional inquiries. Accordingly, we view Postmaster Clauson's response of September 6, 1991, as wholly permissible regardless of its depth, and regardless of its paraphrasing of the June 27, 1988 settlement agreement between Harry and United States Postal Service.

▪ The record before us, however, contains the text of the letters from the congressman and his designated aid in this matter, Julie Tagen of the Subcommittee on Human Resources staff, as well as those from the Postal Service. Therefore, we were able to assess the responsiveness of the Postal Service's letters to the inquiries from the congressional offices.[9] Our inquiry being

---

8. Additionally, Plaintiff claims that the 1988 Settlement Agreement, entered into before an EEOC Administrative Law Judge, by it own terms, was to be kept confidential and that the Postal Service's disclosure to Representative Kanjorski was directly violative of the "gag order" provision. We decline to address that issue at this time as this Court is divested of jurisdiction absent both

a review of the agreement by the ALJ and an appeal of the ALJ's determination.

9. "Offices" plural—meaning either Congressman Kanjorski's office as a Representative or the office of the Subcommittee on Human Resources of which Mr. Kanjorski was the Chairman prior to and during the initiation of this action.

whether the Postal Service's disclosure exceeded the congressional inquiries.

After a review of the record before us, we find that, given the non-delineating language of the Kanjorski intervention letter (Doc. No. 10, Amended Complaint, Exh. "E") and the detailed letter of Julie Tagen (Doc. No. 16, Defendant's Statement of Material Facts, attachment), a staff member from the Committee on Post Office and Civil Service's Subcommittee on Human Resources (of which Congressman Kanjorski is a member), the Postal Service's response to Congressman Kanjorski was neither excessive nor, detrimental to Plaintiff Harry's present Privacy Act Claim—the same claim for which the statute of limitations sounded the death knell.

On April 23, 1991, Mr. Kanjorski wrote to Mr. Charles Clauson, Chief Postal Inspector at that time, asking him to investigate Harry's allegations. Mr. Kanjorski indicated Harry claimed that he had discovered, as a result of an OSHA complaint he was filing, that his medical files had been tampered with, perhaps intentionally, by the Hazleton Postmaster. (Doc. No. 1, Complaint, Exh. "E," also Doc. No. 10, Amended Complaint, Exh. "E").

In a letter dated April 26, 1991, Mr. Clauson indicated that Julie Tagen had been contacted on April 11, 1991, and that a further response would follow the receipt of greater detail of the alleged offenses from Ms. Tagen. (Doc. No. 16, Defendant's Statement of Material Facts). Ms. Tagen provided more information in a letter dated April 23, 1991. Her letter contained a list of facts from the mid 1970's to 1988 detailing the background of Harry's claims of handicap discrimination and the mismanagement of his files.

Following receipt of Ms. Tagen's letter, Clauson wrote to Congressman Kanjorski again on September 6, 1991. In his letter he indicated that in the 1988 settlement, Harry had agreed to withdraw all grievances, Privacy Act Claims, and congressional inquiries.[10] In that letter, Clauson also described, according to the accounts of the different postmasters or officers in charge in Hazleton, the maintenance of Harry's files since the 1988 agreement. In short, Mr. Clauson's letter addressed matters not only germane to Harry's present Privacy Act claim but to his entire tenure at the Post Office as did Ms. Tagen's letter.

Although Plaintiff Harry complains that the 1988 agreement had nothing to do with his privacy act claim, it is apparent that Mr. Clauson thought, and understandably so, that the language "not pursue any privacy act violations" contained in that agreement was pertinent to an understanding of Plaintiff's general employment history and the relationship between the Postal Service and Harry prior to the current claim.

 What Plaintiff must prove, but fails to, is that: (1) the disclosure to the person intervening on his behalf was somehow detrimental to his Privacy Act claim; (2) the disclosure was a willful and intentional disclosure; and (3) that he suffered an adverse effect as a result of the disclosure. *Quinn v. Stone*, 978 F.2d 126, 137 (3rd Cir.1992); *Albright v. United States*, 732 F.2d 181, 186 (D.C.Cir.1984).

(1) Let us remember that the Clauson letter of September 6, 1991, was a response to Congressman Kanjorski's request for an investigation. Presumably, Mr. Kanjorski's intervention and following efforts were to help and not harm Plaintiff's attempt to build a case. The fact that the investigation revealed what Plaintiff obviously feels is damaging information is irrelevant. Upon learning of Plaintiff's litigation history and his 1988 settlement agreement, Congressman Kanjorski neither abandoned Harry, nor attempted to dissuade him from pursuing his

---

**10.** Plaintiff specifically takes issue with the following excerpt of Clauson's letter:

Mr. Harry's allegations were examined through various Equal Employment Opportunity Commissions (EEOC) investigations and American Postal Workers Union (APWU) grievances. In 1988, an EEO settlement was reached in which, among other things, Mr. Harry agreed to: 1) withdraw all congressional inquiries and/or investigations; 2) withdraw all pending grievances; and 3) not pursue any Privacy Act violations against the Postal Service of postal officials. Additionally, Mr. Harry agreed that if the terms of the settlement were disclosed, all benefits accruing to him or to his representative would be forfeited.

failure to maintain files—Privacy Act claim. In addition, there was no further disclosure of the information. In this light, we cannot see how the disclosure injured his litigation posture.

(2) For Plaintiff to receive an award of damages under the Privacy Act, he must show that the Postal Service "acted in a manner which was intentional or willful." 5 U.S.C. § 552a(g)(4). The Courts have interpreted this standard as requiring a showing of conduct on the part of the agency that is more than negligent. *Johnston v. Horne,* 875 F.2d 1415, 1422 (9th Cir.1989) (requiring conduct "amounting to more than gross negligence"); *Andrews v. VA,* 838 F.2d 418, 424–25 (10th Cir.), *cert. denied,* 488 U.S. 817, 109 S.Ct. 56, 102 L.Ed.2d 35 (1988); *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C.Cir. 1987).

■ As interpreted by this Court, the language of § 552a(g)(4) does not make the Postal Service strictly liable for every affirmative or negligent action that might be said to violate the Privacy Act's provisions. The violation must be so "patently egregious and unlawful" that anyone undertaking the conduct should have known it unlawful. *Wisdom v. Dept. of Hous. & Urban Dev.,* 713 F.2d 422, 425 (8th Cir.1983).

In this case, the Postal Inspection Service disclosed information not on its own initiative but in response to a congressional inquiry and request for an investigation. Again, the plain language of the Federal Register promulgated pursuant to the Privacy Act and its "routine use" exception to § 552a(b) gives us no parameters to utilize in restricting the Postal Service's response. Absent an attempt by Plaintiff to prove that the Postal Service acted without grounds for believing its actions lawful, we must conclude that the record before us is devoid of a genuine issue as to the Service's intent in disclosing the import of the 1988 settlement agreement.

■ (3) This claim of wrongful disclosure under the Privacy Act requires, however, not merely an intentional or willful disclosure, but also actual damages sustained or "an adverse effect" as a result of such disclosure. We hold this to mean that the viola-

tion of the Act must *cause* the damages complained of. In the present case, that means Harry had to establish that the reason he suffered physical damages was the disclosure of the 1988 settlement through Clauson's letter to Congressman Kanjorski. In other words, Harry must establish that he suffered the claimed injuries and that those injuries were caused by the letter's contents.

■ According to the record before us, Mr. Harry's health problems started as far back as 1975. Mr. Harry tells us that the first time he was treated for any of his "current" ailments was in 1975. He admits that prior to 1989 (the year in which Harry realized problems with the maintenance of his files and nearly three years prior to initiation of this suit) he had been hospitalized some fifteen times. Furthermore, according to Plaintiff Harry himself, all the ailments he recently suffered are a direct result of the maintenance, or lack thereof, of his files and the EEOC procedures he was involved in as a result of his grievance. (Doc. No. 37, Harry Deposition, p. 19). It is clear that the aggravation of most of these sufferances (heart problems, vertigo, kidney stones) started between 1989 and 1991, although some resurfaced in 1992. But nowhere in the record does Harry state, let alone prove, that these illnesses and various ailments were caused by the letter dated September 6, 1991, from Clauson to Kanjorski. We fail to see just how there exists a causal link.

## CONCLUSION

For the reasons stated above, summary judgment will be granted in favor of the Defendant on all claims. An appropriate Order is attached.

## ORDER

AND NOW, THIS 28th DAY OF SEPTEMBER, 1994, IT IS HEREBY ORDERED THAT:

1. The Plaintiff's Privacy Act claim regarding improper maintenance of files is time-barred and therefore, DISMISSED for failure to satisfy the Statute of Limitations.

2. The Defendant's Motion for Summary Judgment as to the remaining wrongful disclosure claims is GRANTED.

3. Judgement is entered in favor of the Defendant.

4. The Clerk of Court is directed to close the case file.

5. This Order disposes of Documents numbered 15 and 18.

6. Any appeal from this decision will be deemed frivolous, taken in bad faith, and without probable cause.