Elias Fernando **ROMERO–VARGAS,** et al., **Plaintiff,**

v.

Donna E. **SHALALA, in her official capacity as Secretary of Health & Human Services, Defendant.**

No. 3:94 CV 7667.

United States District Court,
N.D. Ohio,
Western Division.

Oct. 13, 1995.

Memorandum Denying Motion to Alter or Amend Dec. 12, 1995.

Randall C. Marshall, Patricia Y. Hernandez, Advocates for Basic Legal Equality, Inc., Toledo, OH, Stephen M. Dane, Keith L. Mitchell, Cooper, Straub, Walinski & Cramer, Toledo, OH, for Elias Fernando Romero–Vargas.

Randall C. Marshall, Patricia Y. Hernandez, Advocates for Basic Legal Equality, Inc., Toledo, OH, for Antonio Noyola–Arroyo, Leobardo Valdez, Odilon Castillo, Macrino Suastegui, Nicodemuz Vasquez, Teresa Arellano, Rodrigo Lopez, Tirso Serrano.

Robert G. Trusiak, Office Of The U.S. Attorney, Toledo, OH, for Donna E. Shalala.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on cross motions for summary judgment. Because Plaintiffs have shown that no material issue of fact exists and that they are entitled to judgment as a matter of law, Plaintiffs' motion will be granted. Defendant's motion for summary judgment will be denied.

## BACKGROUND

Plaintiffs brought this action under the Privacy Act of 1974, 5 U.S.C. § 552a, alleging

that a Social Security Administration ("SSA") employee improperly disclosed confidential information from the Social Security records of approximately sixty Hispanic employees working for Harold and Betty Freeworth. The material facts are not in dispute.

The facts underlying this case arise out of an earlier case, *Carrada v. Rainbow Tomato, Inc.*, 3:94 CV 7329. Plaintiffs are among a group of migrant farmworkers who brought suit against Harold and Betty Freeworth on June 23, 1994, alleging violations of the Migrant and Seasonal Agricultural Worker Protection Act, and the Fair Labor Standards Act. Plaintiffs obtained a series of temporary restraining orders, beginning on June 23, 1994, to prevent the Freeworths from discharging them in retaliation for bringing the suit. That lawsuit ultimately settled.

On July 7, 1994, while *Carrada* was pending, Betty Freeworth telephoned the Social Security Office in Defiance, Ohio, and requested verification of each plaintiff's Social Security number, as part of an attempt to investigate every plaintiff's immigration status. She talked with an SSA claims development clerk, Laurie Wilhelm, who checked the names and Social Security numbers Freeworth gave her, and indicated in each case whether the number was valid or invalid.

When Freeworth called the Social Security office, she identified herself to Wilhelm as Plaintiffs' employer. Wilhelm did not verify Freeworth's identity beyond Freeworth's statement that she was an employer. Wilhelm did not ask Freeworth the reason she was requesting the information. Wilhelm confirmed mismatches of names and Social Security numbers, as well as positive matches. And where the Social Security numbers turned out to belong to children or deceased persons, Wilhelm gave Freeworth this information as well. Each of these actions violated the guidelines published in the Social Security Program Operations Manual System ("POMS").

Plaintiffs brought the instant suit, claiming that these violations of Social Security guidelines also constitute a violation of the Privacy Act of 1974 and its applicable Regulations. Defendants respond that these guidelines are not binding on Social Security employees;

they argue further that even if there was a violation, it was not willful or intentional, and therefore cannot be remedied under the Privacy Act. Both sides have moved for summary judgment.

## DISCUSSION

### A. Summary Judgment Standard

As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* 477 U.S. at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). This case is particularly appropriate for disposition by summary judgment, since the parties agree that there is no genuine issue as to any material fact.

### B. The Privacy Act of 1974

The Privacy Act of 1974 ("the Act") regulates the collection, maintenance, use and dissemination of information by federal agencies "in order to protect the privacy of individuals identified in information systems maintained by [these] agencies." Section 2(a)(5), Publ. L. 93–579, *reprinted in* 1974 U.S.C.C.A.N. 2178. It provides that:

> [n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be—
>
> * * * * * *
>
> (3) for a routine use. . . .

5 U.S.C.A. § 552a(b) (West 1977 & Supp. 1995). If an agency intentionally or willfully violates this section, or any rule promulgated under it, in such a way as to have an adverse effect on an individual, the aggrieved individual may bring a civil action against the agency, and may recover (a) the greater of $1,000 or the individual's actual damages, and (b) reasonable attorney fees and costs. 5 U.S.C.A. § 552a(g)(1)(D) & (g)(4) (West 1977 & Supp.1995).

■ The question presented by this case is whether, on the facts given above, the Social Security Administration intentionally or willfully violated Plaintiffs' rights in such a way as to have an adverse effect on them. To make this determination, the Court must answer three questions: (1) Was the Privacy Act of 1974 violated? (2) If so, was the violation intentional or willful? (3) Were Plaintiffs adversely affected?

### C. Was the Privacy Act of 1974 Violated?

■ The Act requires a federal agency to obtain the written consent of an individual before it discloses information about that individual to a third party. There is an exception to this consent requirement when disclosure is for a routine use. The parties agree that Wilhelm disclosed information about Plaintiffs to Freeworth without Plaintiffs' consent. They disagree about whether disclosure of Social Security numbers to an employer under the circumstances described above constitutes a "routine use."

Each federal agency that maintains a system of records is required to publish annually in the Federal Register a notice of its records system, including notice of "each routine use of the records contained in the system, including the categories of users and the purpose of such use." 5 U.S.C.A. § 552a(e)(4)(D) (West 1977). The SSA has established two routine uses allowing disclosure to an individual's employer without the individual's consent. Disclosure of the information held in System 09–60–0058, Master Files of SSN Holders and SSN Applications, is allowed as follows: "[e]mployers are notified of the SSNs of employees in order to complete their records for reporting wages to SSA pursuant to the Federal Insurance Compensation Act and section 218 of the Act." 60 FR 13442, 13443 (March 13, 1995). Employers may also have access to the information held in System 09–60–0059, Earnings Recording and Self–Employment Income System, "for correcting and reconstructing State employee earnings records and for social security purposes." 58 FR 48525, 48526 (September 16, 1993). The Regulations do not allow disclosure to employers for any other purpose.

In this case, Freeworth did not seek to obtain the Social Security numbers in order to meet the requirements of FICA or to reconstruct employee earnings records. She did not represent to Wilhelm that she was so doing. It is clear, therefore, that SSA violated the Privacy Act of 1974 when the information was disclosed.

### D. Was the Violation Intentional or Willful?

In order to prevail, however, Plaintiffs must demonstrate more than a simple violation of the Act. They must show that the violation was "intentional or willful." The legislative history of the Act indicates that Congress intended the standard to be "viewed as only somewhat greater than gross negligence." *Analysis of House and Senate Compromise Amendments to the Federal Privacy Act,* 120 Cong.Rec. 40,405, 40,406 (1974), *reprinted in* Legislative History of the Privacy Act of 1974, at 990 (1976). While the Sixth Circuit has never had occasion to define the standard precisely, the law is well settled in other Circuits that the Act imposes liability whenever the agency "commit[s] the act without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act." *Albright v. United States,* 732 F.2d 181, 189 (D.C.Cir.1984); *see also Wilborn v. Department of Health & Human Servs.,* 49 F.3d 597, 602 (9th Cir. 1995); *Britt v. Naval Investigative Serv.,* 886 F.2d 544, 551 (3d Cir.1989); *Andrews v. Veterans Admin. of the United States,* 838 F.2d 418, 424–25 (10th Cir.1988). This Court must therefore ask whether Wilhelm disclosed the Social Security numbers to Freeworth without grounds for believing the disclosure to be lawful, or with flagrant disregard for Plaintiffs' rights under the Act.

Plaintiffs have suggested that this Court should find that Wilhelm intentionally and willfully violated the Privacy Act if she violated the applicable guidelines for Social Security employees, published in the Program Operations Manual System. These guidelines, while not having the force of law, (*Schweiker v. Hansen,* 450 U.S. 785, 789–90, 101 S.Ct. 1468, 1471–72, 67 L.Ed.2d 685 (1981)), can give this Court insight into the level of safeguards SSA considers necessary to protect individuals' rights under the Privacy Act.

Defendant, on the other hand, invites this Court to look to the "spirit of the law," apart from the written guidelines, and ask whether Wilhelm could reasonably have believed she was disclosing information for a purpose compatible with the purpose for which the record was collected. *See* 20 C.F.R. § 401.310 ("routine use" is any disclosure which is compatible with the purpose for which the record was collected).

If the Court adopts Plaintiffs' view, it must find a willful violation of the Act. Wilhelm violated several POMS guidelines when she gave Freeworth information about Plaintiffs' Social Security numbers. First, Wilhelm violated both the Federal Regulation, *supra,* and a POMS guideline when she disclosed information to more than "the extent necessary for correction or reconstruction of earnings records or for Social Security tax purposes." GN 03310.045.B.2.a. Second, she violated several guidelines relating to the release of information by telephone. Only a positive verification of an employee's Social Security number may be given to an employer by telephone. GN 03360.005.A.7.a. Wilhelm gave both positive and negative verifications of the employee Social Security numbers. The employer must provide the name, Social Security number, date of birth and sex before a match can be confirmed. *Id.* Wilhelm disclosed information with only a name and Social Security number. Because of the difficulty of proving identity, personal information may not be disclosed to employers based on a telephone request. GN 03360.005A.7.b. Wilhelm informed Freeworth that some of the Social Security numbers Freeworth gave her were assigned to children. Third, Wilhelm failed to follow prescribed procedures for verifying Freeworth's identity. In cases where the caller is not an SSA employee, the claims development clerk is to ask the caller to provide his or her Employer Identification Number (EIN), and verify the EIN by using the Alpha Access to Employer Identification System (AEQY). GN 03360.005B.4.g. If the caller's identity cannot be verified, the clerk cannot disclose any information, but must send the information by mail to the person about whom the request is made. GN 03360.005B.2.a. Wilhelm admitted that she accepted Freeworth's word that Freeworth was an employer and made no independent attempt to verify Freeworth's identity.

The Court need not adopt Plaintiff's extreme position, however, to find that Wilhelm disclosed information without grounds for believing the disclosure to be lawful, or with

flagrant disregard for Plaintiffs' rights under the Act. Wilhelm's actions indicate a blatant disregard not only for the specifics of the POMS guidelines, but for the policies underlying the guidelines and the law they are meant to effectuate. Wilhelm disclosed confidential information to an unknown voice on the telephone, with no attempt to confirm Freeworth's identity. She made no attempt to discover the purpose for which the information was requested. She disclosed information she could not legally disclose, even had she confirmed that she was talking with an employer.

Defendant argues that Wilhelm acted in accordance with the customary procedure she has employed during her eleven and a half years of employment with SSA. Wilhelm's supervisor has testified that these procedures are customarily followed by SSA employees in the six-state region which includes Ohio. If this is so, this Court can only conclude that SSA employees in this region have a custom and practice of violating both SSA guidelines and the Privacy Act.

 The statute and regulations are clear. Disclosure without the written consent of the person whose Social Security number is being disclosed is permitted only for routine uses of that information. The only routine uses for which employer can obtain that information are in order for the employer to comply with FICA, or to correct employee earnings records. The Act places an affirmative duty on federal agency employees with access to confidential information carefully to safeguard that information. This is not, as Defendant claims, a case in which a federal employee made an effort to comply with the statute and fell short of a picayune regulation hidden in the small print of a voluminous manual. It is a case in which no effort whatsoever was made to protect Plaintiffs' privacy rights. The Court finds that Defendant's violation of the Act was intentional and willful.

E. Were Plaintiffs Adversely Affected?

 The statute requires that Defendant's violation cause an adverse effect on Plaintiffs. The Sixth Circuit has never addressed the question of what constitutes an

adverse effect in the context of the Privacy Act of 1974.

One court has taken a restrictive approach, holding that a plaintiff must show actual pecuniary loss in order to have standing to bring a claim under the Privacy Act. *See DiMura v. Federal Bureau of Investigation*, 823 F.Supp. 45, 47 (D.Mass.1993).

 The better reasoned view, taken by the overwhelming majority of courts, is that emotional distress caused by the fact that the plaintiff's privacy has been violated is *itself* an adverse effect, and that statutory damages can be awarded without an independent showing of adverse effects. *E.g., Wilborn v. Department of Health & Human Servs.*, 49 F.3d 597, 603 (9th Cir.1995); *Rorex v. Traynor*, 771 F.2d 383, 387 (8th Cir.1985); *Albright v. United States*, 732 F.2d 181, 186 (D.C.Cir.1984); *Johnson v. Department of the Treasury, IRS*, 700 F.2d 971 (5th Cir.1983); *Fitzpatrick v. IRS*, 665 F.2d 327, 331 (11th Cir.1982); *Parks v. United States, IRS*, 618 F.2d 677, 682–83 (10th Cir.1980); *Hrubec v. National R.R. Passenger Corp.*, 829 F.Supp. 1502, 1506, (N.D.Ill.1993); *Andrews v. Veterans Admin. of the United States*, 613 F.Supp. 1404, 1415–16 (D.Wyo.1985).

This interpretation comports with the Supreme Court's general holding that the primary damage in "right to privacy" cases is mental distress. *Time, Inc. v. Hill*, 385 U.S. 374, 384, 87 S.Ct. 534, 540, 17 L.Ed.2d 456 (1967). It also comports with the legislative history and purposes of the statute. The Act's remedial provisions are designed to provide a means of statutory enforcement, as well as compensation to aggrieved individuals. One purpose of the statutory damages of $1,000 is to provide an incentive for individuals who have minimal damages to sue, thereby "encourag[ing] the widest possible citizen enforcement through the judicial process," S.Rep. No. 1183, 93d Cong., 2d Sess. 83, *reprinted in* 1974 U.S.C.C.A.N. 6997. As the Fifth Circuit has said:

"[a] federal act affording special protection to the right of privacy can hardly accomplish its purpose of protecting a personal and fundamental constitutional right if the primary damage resulting from an invasion

of privacy is not recoverable under the major remedy of 'actual damages' that has been provided by Congress."

*Johnson, supra,* at 977.

The Court therefore finds that Plaintiffs were adversely affected by Defendant's unlawful disclosure. Plaintiffs are entitled to statutory damages of $1,000 each.

### CONCLUSION

For the above reasons, Plaintiffs' Motion for Summary Judgment is granted.

IT IS SO ORDERED.

### MEMORANDUM AND ORDER ON MOTION TO ALTER OR AMEND

█ This matter·is before the Court on Defendant's Motion to Alter or Amend Judgment pursuant to Fed.R.Civ.P. 59(e). The purpose of a motion to alter or amend judgment is to correct manifest errors of fact or law. *In re Continental Holdings, Inc.,* 170 B.R. 919, 933 (Bankr.N.D.Ohio 1994); *Braun v. Champion Credit Union,* 141 B.R. 144, 146 (Bankr.N.D.Ohio 1992), aff'd, 152 B.R. 466 (N.D.Ohio 1993); *In re Oak Brook Apartments of Henrico County, Ltd.,* 126 B.R. 535, 536 (Bankr.S.D.Ohio 1991). *See also* James A. Moore, 6A Moore's Federal Practice, ¶¶ 59.03, 59.07 (1995). It is not designed to give an unhappy litigant an opportunity to relitigate matters already decided; nor is it a substitute for appeal. *Dana Corp. v. United States,* 764 F.Supp. 482, 488–89 (N.D.Ohio 1991); *Erickson Tool Co. v. Balas Collet Co.,* 277 F.Supp. 226 (N.D.Ohio 1967), aff'd 404 F.2d 35 (6th Cir.1968); Braun v. Champion Credit Union, 141 B.R. at 146; *In re Oak Brook Apartments,* 126 B.R. at 536.

█ In this case, Defendant argues that the Court made an error of law when it found Plaintiffs entitled to statutory damages in the absence of specific findings of mental distress. In its earlier Memorandum Opinion, this Court joined with the overwhelming majority of jurisdictions to hold that "emotional distress caused by the fact that the plaintiff's privacy has been violated is *itself* an adverse effect." (Mem.Op. at 9.) This Court also noted that the Privacy Act's "remedial provi-

sions are designed to provide a means of statutory enforcement, as well as compensation to aggrieved individuals." (Mem.Op. at 10.)

Although Plaintiffs' case did not contain a separately paginated section labeled "adverse effects" or "emotional distress," the Court finds that Plaintiffs did present adequate evidence that they were adversely affected by Defendant's disclosures. Plaintiffs presented unrebutted evidence that Defendant's disclosures contributed to the harassment and discrimination conducted by Betty Freeworth. Plaintiffs presented unrebutted evidence that Defendant's disclosures caused Plaintiffs to incur legal costs in defending against Freeworth's claims. Furthermore, it is eminently reasonable to infer that Plaintiffs suffered mental distress by the fact of knowing that their personal information had been disclosed, in violation of federal law, to a woman against whom they had a pending lawsuit. This is unrebutted evidence of adverse effects.

Defendant's Motion to Alter or Amend Judgment (Doc. No. 35) is, therefore, denied.

IT IS SO ORDERED.