Tyrone **WILEY, Plaintiff,**

v.

**DEPARTMENT OF VETERANS AFFAIRS, Defendant.**

No. 00–74745.

United States District Court, E.D. Michigan, Southern Division.

Dec. 12, 2001.

Stefani A. Carter, Esq., Ann Arbor, MI, for plaintiff.

Mary Rigdon, AUSA, U.S. Attorneys Office, Detroit, MI, for defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROSEN, District Judge.

### I. *INTRODUCTION*

Plaintiff Tyrone Wiley commenced this suit in this Court on October 25, 2000,

alleging that the Defendant Department of Veterans Affairs (the "VA") violated the federal Privacy Act, 5 U.S.C. § 552a, by releasing records of Plaintiff's medical diagnosis and treatment at a VA medical center in Ann Arbor, Michigan. The Privacy Act prohibits federal agencies from disclosing "any record which is contained in a system of records by any means of communication ... except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains," unless the disclosure is permitted under one of twelve statutory exceptions. 5 U.S.C. § 552a(b).

By motion filed on June 29, 2001, Defendant now seeks summary judgment in its favor on Plaintiff's Privacy Act claim, arguing primarily that its release of Plaintiff's records was supported by a valid written consent. Plaintiff filed a response to this motion on July 31, 2001, and Defendant filed a reply in further support of its motion on August 23, 2001.

On December 6, 2001, the Court held a hearing on Defendant's motion. Having reviewed the briefs and supporting materials submitted by the parties, and having considered the arguments of counsel at the December 6 hearing, the Court now is prepared to rule on this motion. This Opinion and Order sets forth the Court's rulings.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Tyrone Wiley is a veteran of the United States Army, having served in Vietnam from December 1967 to December 1970. At various times in the past, and continuing through the present, he has received disability compensation benefits from the Defendant Department of Veterans Affairs ("VA"). This lawsuit arises from Defendant's release to Plaintiff's former employer, the Ann Arbor Transportation Authority (the "AATA"), of records relating to Plaintiff's VA disability benefits and an associated medical diagnosis and treatment for Post Traumatic Stress Disorder ("PTSD").[1]

Plaintiff applied for employment with the AATA on February 26, 1990. His employment application contained a release that authorized the AATA to corroborate and secure information about his background:

I represent that the answers and information given by me in this application are true and complete without qualification. I hereby authorize AATA to verify the same and to make any investigation of my background deemed necessary. I authorize former employers, law enforcement organizations, educational institutions and any other third party to give AATA any information they have regarding me without receiving written notice from them.

AATA has the right to terminate my employment at any time if it discovers that I have provided incomplete, untrue or misleading answers in this application or on any other documents or forms at any time during my employment.

I authorize AATA to use any information in its possession concerning me for any purpose it deems appropriate, including disclosure of information to any third party without any notification to me of such disclosure and I release

---

1. Plaintiff apparently began receiving VA disability compensation benefits for PTSD in 1991. These benefits initially were paid at the 100% level, were briefly reduced to 70% in the summer of 1995, and then were restored to the 100% level as of November 1, 1995, continuing through the present. In addition, beginning in 1995, Plaintiff received treatment for this condition at the PTSD Clinic located at the VA Medical Center in Ann Arbor, Michigan. Plaintiff discontinued this treatment in late 1997, but resumed it in March of 1999.

AATA from any liability in connection with such use or disclosure.

(Defendant's Motion, Statement of Material Facts at ¶ 4.)

Plaintiff began his employment with the AATA on December 3, 1990. He initially worked as part of the service crew, and then, beginning on May 18, 1992, was employed as a bus driver. In September of 1997, Plaintiff was suspended from his job on allegations of sexually harassing a female passenger. He was discharged on November 25, 1997, on the two grounds of sexual harassment and falsification of his employment application.[2] Plaintiff contested his termination through the union, and an arbitrator affirmed the discharge in an opinion dated November 2, 1999, solely on the basis of the sexual harassment charge. (*See* Defendant's Motion, Ex. 4.)

During the course of the union grievance proceedings, the AATA requested information from Defendant concerning Plaintiff's disability benefits.[3] According to the AATA's attorney, David Kempner, the AATA sought this information in order to address Plaintiff's anticipated defense that any misstatements on his employment application were due to his difficulties in remembering dates, times, and places as a result of his PTSD. In particular, Plaintiff had made precisely this argument at a January 9, 1998 administrative hearing on Plaintiff's claim for unemployment benefits, and had introduced three documents from Defendant confirming his PTSD and the resulting award of VA disability benefits.[4] Thus, shortly after this hearing, on January 15, 1998, Kempner telephoned a counselor at Defendant's Detroit regional office, and was told that Plaintiff was, in fact, rated 100% disabled, and that he was receiving disability benefits in the amount of $2,219 per month. On October 28, 1998, during the course of the arbitration proceedings on Plaintiff's discharge, Kempner again spoke by telephone to a different VA counselor, who confirmed the prior information regarding Plaintiff's disabled status and his disability benefits.

During the second telephone call on October 28, Kempner inquired about the exact date on which Plaintiff had begun to receive disability benefits, as well as the dates of any changes in his disability rating. Kempner was advised by the VA counselor, Mr. Adams, that Defendant could not provide this information without

---

2. The record does not disclose the details of the AATA's charge that Plaintiff had provided false information on his employment application.

3. As Plaintiff points out, this is not the first time the AATA sought information from Defendant concerning Plaintiff's medical conditions and treatments. Rather, in the summer of 1995, after Plaintiff's wife reported to the AATA that Plaintiff was experiencing difficulties in sleeping as a result of PTSD, the AATA instructed Plaintiff to submit to a fitness-for-duty examination, and then, following this exam, asked Plaintiff to sign a form authorizing the VA Hospital to release his medical records. Plaintiff refused to sign this form, and also refused to sign a more narrowly tailored version limited to "medical information relating to [Plaintiff's] present counselling status, [his] regular attendance at coun-

selling sessions or [his] ability to work as a Motor Coach Operator." (Plaintiff's Response, Ex. 2.) Instead, Plaintiff provided a brief letter from a VA psychiatrist stating that Plaintiff "is a responsible individual and is able to work at this time," (*id.*, Ex. 3), and also produced a letter from his attorney warning that "[t]here is *no* legitimate basis for [the AATA] to be making these demands [for medical records] of my client," (*id.*, Ex. 4). The AATA apparently did not pursue the matter further, and there is no evidence that Defendant was aware of these 1995 exchanges between Plaintiff and his employer regarding his VA medical records.

4. Copies of these VA documents were provided to the AATA and its counsel at the conclusion of the January 9, 1998 administrative hearing.

a release from Plaintiff. Kempner explained that no such release could be obtained from Plaintiff, in light of his discharge by the AATA and the subsequent grievance proceedings challenging this termination. Kempner further stated, however, that Plaintiff had executed a broad release in connection with his application for employment, which authorized third parties to disclose information pertaining to him. Defendant's representative responded that this would be sufficient, and advised Kempner to forward this release, along with a written request for information.

Attorney Kempner prepared a written request for further information concerning Plaintiff's current disability status, his PTSD condition, and his history of VA disability determinations and payments, and sent this request to Defendant on October 28, 1998, enclosing a copy of the general release signed by Plaintiff at the time of his application for employment. The request was processed,[5] and a copy of Plaintiff's entire Claims File (the "C file"), consisting of 466 pages of materials, was sent to the AATA on November 19, 1998. Although this "C file" is not Plaintiff's medical file, it contains materials relating to Plaintiff's medical conditions and treatments as part of the record of Plaintiff's requests for disability benefits and the

VA's various disability determinations and benefit awards to Plaintiff.[6]

Upon learning of this disclosure, Plaintiff brought the present action under the federal Privacy Act, alleging that Defendant's unlawful release of his C file caused severe emotional damage.[7] Plaintiff also has commenced a separate state-court invasion-of-privacy suit against the AATA.

## III. ANALYSIS

### A. The Standards Governing Defendant's Motion

In its present motion, Defendant seeks summary judgment in its favor on Plaintiff's claim under the federal Privacy Act. Under the relevant Federal Rule, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Three 1986 Supreme Court cases—*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91

---

5. Defendant has issued guidelines for responding to Privacy Act requests. A users' guide, for example, states that "[p]rior [w]ritten [c]onsent by the individual must be addressed to the VA, and must describe the records to be released, to whom and for what purpose." (Defendant's Motion, Ex. 3, del Cimmuto Decl. at ¶ 6.) It seems evident that not all of these conditions were satisfied in this case; for instance, Plaintiff's consent in his AATA employment application clearly was not "addressed to the VA."

6. Even Kempner has expressed his "absolute[] amaze[ment] at both the volume of

documents received from the VA's Detroit Regional Office and their contents." (Defendant's Reply Br., Ex. 5A, Kempner Aff. at ¶ 17.)

7. Plaintiff's psychologist, Dr. Richard M. Amdur, identified four factors as contributing to Plaintiff's decision to resume his treatment for PTSD in March of 1999:(1) the murder of his daughter and the subsequent trial of her murderer; (2) a battle with his ex-wife concerning the custody of his 3–month–old granddaughter; (3) the loss of his job in 1997; and (4) the release of his VA file in 1998.

L.Ed.2d 265 (1986)—ushered in a "new era" in the federal courts' review of motions for summary judgment. These cases, in the aggregate, lowered the movant's burden in seeking summary judgment.[8] As explained in *Celotex:*

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

Upon reviewing the above trilogy, the Sixth Circuit announced a series of principles governing motions for summary judgment. These principles include:

> * Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> * The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> * The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."
>
> * The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.
>
> * The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead the rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989); *see also Nernberg v. Pearce,* 35 F.3d 247, 249 (6th Cir.1994). The Court will apply these principles in considering Defendant's motion.

**B. Defendant's Release of Plaintiff's Records Was Supported by a Valid Written Consent.**

As noted at the outset, the Privacy Act generally prohibits the disclosure of records by a federal agency, such as Defendant, "except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b).[9] Defendant's principal argument in support of its present motion rests upon the proposition that the release provided by the AATA supplied the requisite "prior written consent" to authorize Defendant's disclosure of Plaintiff's VA claims file. Under the cir-

---

**8.** "[T]aken together, these three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure,* § 2727, at 468 (1998) (footnote omitted).

**9.** This prohibition is subject to twelve statutory exceptions, none of which is claimed to apply here. *See* 5 U.S.C. § 552a(b). In addition, Defendant does not dispute that it disclosed records within the meaning of the Privacy Act.

cumstances presented here, the Court agrees.

■ In challenging Defendant's reliance on the AATA release, Plaintiff first argues that this release, signed in connection with his application for employment, authorized the AATA to investigate Plaintiff's background only for the limited purpose of deciding whether to hire him. As this hiring decision was made in 1990, some eight years prior to the information disclosure at issue here, Plaintiff contends that the AATA application form could not possibly operate as a prospective written consent to release Plaintiff's VA records during the course of the grievance proceedings in which Plaintiff challenged his termination. This argument, however, cannot be squared with the plain language of the AATA release, and also ignores the circumstances surrounding Defendant's disclosure of information to the AATA and its attorney.

First, the Court observes that the language of the AATA release is quite broad, and is not limited solely to disclosures for the purpose of conducting a pre-hire background check. Rather, the release generally, and without reference to a particular time period, authorizes the AATA to verify "that the answers and information given by [Plaintiff] in this application are true and complete," and to "make any investigation of my background deemed necessary." Likewise, there is no limiting language, whether as to time period or as to purpose, in the provision authorizing third parties to "give AATA any information they have regarding" Plaintiff. In fact, the release seems to contemplate the possibility of post-hire disclosures and investigations, acknowledging that the "AATA has the right to terminate [Plaintiff's] employment **at any time** if it discovers that [Plaintiff] ha[s] provided incomplete, untrue or misleading answers in this application or on any other documents or forms

**at any time** during [Plaintiff's] employment." Plainly, the AATA would have no basis for acting "at any time" if it were limited solely to discoveries made during a pre-hire background check.

Next, and just as importantly, Plaintiff's argument overlooks the purpose for which the AATA sought disclosure of the VA file—namely, to support its position in its dispute with Plaintiff over the truth or falsity of the information contained in Plaintiff's employment application. The language of the release, as well as its placement within the employment application, leaves no doubt as to the principal object of this provision—it plainly was intended to afford the AATA the means to determine whether a job applicant had truthfully provided his background information. Viewed in context, then, the AATA's use of Plaintiff's written consent in this case did not constitute an unwarranted expansion of limited authority granted years earlier and for a wholly different reason. Rather, the AATA invoked the release in a manner entirely consistent with the central purpose for which it obtained Plaintiff's consent in the first instance.

■ Indeed, while Defendant does not advance such an argument, it appears to the Court that Plaintiff might well have forfeited his Privacy Act protection through *his own* selective disclosure of and reference to his VA records. The case law on this subject, though extremely limited, indicates that an individual can waive the privacy interest that the federal statute is meant to safeguard by himself disclosing otherwise confidential information. *See, e.g., Harry v. United States Postal Service,* 867 F.Supp. 1199, 1206–08 (M.D.Pa. 1994), *aff'd on other grounds,* 60 F.3d 815 (3d Cir.1995); *Schwartz v. United States Dep't of Justice,* 1995 WL 675462, at *8 (S.D.N.Y. Nov.14, 1995), *aff'd,* 1996 WL

335757, 101 F.3d 686 (2d Cir.1996); *Mangino v. Department of the Army*, 1994 WL 477260, at \*4–\*5 (D.Kan. Aug.24, 1994).

In *Schwartz*, for example, the plaintiff alleged that a presentence report prepared in prior criminal proceedings against him was inaccurate in various respects, and he further asserted that this presentence report, a confidential document, had been disclosed in violation of the Privacy Act when the defendants attached it as an exhibit to their motion to dismiss. In support of the first of these two claims, the plaintiff quoted from portions of the presentence report in his initial and amended complaints. The Court rejected the plaintiff's Privacy Act claim, holding that he had "waived any privacy interest he had in his [presentence report] through his own voluntary disclosure of its contents in these proceedings." *Schwartz*, 1995 WL 675462, at \*8. In addition, where the plaintiff had "placed that document in controversy," the Court found that he could not "now object to defendants' using that document in furtherance of their defense." *Id.; see also Mangino*, 1994 WL 477260, at \*5 ("To the extent the Privacy Act created a privilege, plaintiff waived any such privilege when he placed his records at issue."). Similarly, in *Harry*, the Court granted summary judgment to the defendant U.S. Postal Service on the plaintiff's Privacy Act claim, observing that the disclosures challenged by the plaintiff were brought about through the plaintiff's own complaints to his congressman, who in turn sought information from the Postal Service as part of his inquiry into the matter. *See Harry*, 867 F.Supp. at 1206–08.

This same notion of waiver applies with full force here. At the January 9, 1998 administrative hearing on Plaintiff's claim for unemployment benefits, Plaintiff invoked his medical condition as a defense to the AATA's charge that he had falsified information on his employment application.

In support of this defense, he specifically pointed to Defendant's diagnosis of this condition, and he offered selected VA documents into evidence. The AATA naturally would wish to confirm Plaintiff's claim that he suffered from PTSD, and to investigate whether this condition possibly could have affected the truthfulness of the information provided by Plaintiff in his 1990 application for employment. The record indicates that this was, in fact, the motive for the AATA's subsequent requests for information from Defendant— both the timing of the first request, within days after the January 9, 1998 administrative hearing, and the actual language of the AATA's subsequent written request on October 28, 1998 confirm this proposition. Moreover, Plaintiff has produced no evidence that might call this apparent motive into question.

In addition, the related "rule of completeness" lends further support to the view that Plaintiff's own disclosures defeat his Privacy Act claim. This rule, recognized in both the rules of evidence and the case law, holds that a partial disclosure by one party entitles the opposing party to offer the remainder of the record into evidence. *See, e.g.,* Fed.R.Evid. 106 ("When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."); Fed.R.Evid. 410 (holding that an otherwise inadmissible statement made during plea discussions becomes admissible "in any proceeding wherein another statement made in the course of the same ... plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it"); Fed.R.Civ.P. 32(a)(4) ("If only part of a deposition is offered in evidence by a party, an adverse party may require the offer-

or to introduce any other part which ought in fairness to be considered with the part introduced, and any party may introduce any other parts."); *see generally Irons v. Federal Bureau of Investigation*, 880 F.2d 1446, 1453 (1st Cir.1989) (*en banc*) (discussing this rule and citing authorities). Again, this principle of completeness, with its attendant considerations of fairness, is fully applicable here, where Plaintiff introduced a portion of his VA record into evidence, and thereby breached its confidentiality, in order to support his position in an administrative hearing, yet objects that the opposing party ought not have the opportunity to review the entirety of this record to determine whether other portions are adverse to Plaintiff's position.[10]

As his next challenge to Defendant's reliance on the release contained in the AATA employment application, Plaintiff contends that this release, signed in 1990, could not properly support a disclosure eight years later, when the AATA sought information from Defendant in 1998. This argument, however, runs afoul of the decision in *Olivares v. National Aeronautics & Space Admin.*, 882 F.Supp. 1545 (D.Md. 1995), in which the Court rejected this same sort of challenge. In that case, the plaintiff asserted a Privacy Act challenge to his employer's investigation of the educational credentials set forth in his employment application. As authority for this investigation, the defendant agency, NASA, pointed to a consent provision in its employment application that authorized educational institutions, among other third parties, to release information to federal government investigators and human resources personnel. In rejecting the plaintiff's argument that this consent provision

authorized only a one-time initial background check, and not a subsequent re-verification effort undertaken two years later, the Court observed that "there is nothing on the face of the initial [employment application] that limits the duration of the consent." *Olivares*, 882 F.Supp. at 1549. To the contrary, the Court pointed to language in the application stating that false answers might lead to dismissal "after you begin work," and reasoned that "[s]uch language unmistakably comprehends the possibility of follow-up." 882 F.Supp. at 1549. As stated earlier, the same holds true here, where the AATA release includes no time-limiting language, and where it provides that the AATA may act "at any time" upon discovering misstatements in the background information supplied by an applicant.

Finally, Plaintiff contends that the release in his employment application was no longer available for use by the AATA in 1998, as the AATA had terminated his employment in 1997. Once again, however, this ignores the circumstances under which the AATA made its request to Defendant. Although the AATA took the position that Plaintiff had been lawfully discharged, Plaintiff claimed otherwise, and instituted grievance proceedings through his union in an effort to show that the AATA had acted improperly. Plainly, in this context, where Plaintiff was challenging his discharge—and, in particular, was contesting the charge that he had falsified his application—and was asserting a right to continued employment, the AATA was not required to forgo the use of any tools, materials, or other resources it might have acquired during the course of Plaintiff's employment. Rather, since

---

**10.** In this regard, it is worth noting that, under the unrefuted version of events offered by the AATA's counsel, David Kempner, the AATA's further disclosures of the records obtained from Defendant were limited to a few

select individuals and groups (*e.g.*, Plaintiff's union, his attorney, an arbitrator), and were narrowly tailored to the issues involved in Plaintiff's grievance proceeding and his state-court suit against the AATA.

Plaintiff was arguing that he had not been properly discharged, the AATA was entitled to take the position, for purposes of the grievance proceedings, that the various provisions in any employment agreement, union contract, or the like, still were available to define the parties' relationship.

■ In any event, as stated above, the AATA arguably was entitled to review Plaintiff's VA records solely as a consequence of Plaintiff's own use of these records, and even without the consent given in Plaintiff's application for employment. Consequently, the Court finds, under the circumstances presented here, that Defendant's disclosure of Plaintiff's C file did not violate the Privacy Act.[11]

### C. There Is No Evidence that Any Purported Violation of the Privacy Act by Defendant Was "Willful or Intentional."

Even assuming that Defendant's disclosure of Plaintiff's C file to the AATA violated the Privacy Act, Defendant argues that Plaintiff is not entitled to recover damages, as any such violation has not been shown to be "intentional or willful" as required under the Act to sustain an award of damages. Again, the Court agrees.

■ To successfully recover in an action under the Privacy Act, Plaintiff is required to establish, among other things, that the disclosure was "intentional or willful." 5 U.S.C. § 552a(g)(4); *see also Quinn v. Stone*, 978 F.2d 126, 131 (3d Cir.1992).[12] Although the statute does not define these terms, the cases cited by Plaintiff and Defendant alike confirm that the defendant agency must have acted in a manner somewhat beyond gross negligence. *See, e.g., Scrimgeour v. Internal Revenue, U.S.,* 149 F.3d 318, 326 (4th Cir.1998); *Wilborn v. Department of Health & Human Services,* 49 F.3d 597, 602 (9th Cir.1995); *Waters v. Thornburgh,* 888 F.2d 870, 875–76 (D.C.Cir.1989); *Romero–Vargas v. Shalala,* 907 F.Supp. 1128, 1133 (N.D.Ohio 1995). As stated in *Romero–Vargas,* the agency must have disclosed information "without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act." *Romero–Vargas,* 907 F.Supp. at 1133 (internal quotations and citation omitted).

■ Under the circumstances presented here, the Court finds that no reasonable jury could characterize Defendant's conduct as beyond grossly negligent. Even assuming that the Court were incorrect in holding that the AATA release authorized the disclosure of Plaintiff's C file, the question would at least be a close one, and reasonable minds clearly could differ on the scope of the release. Accordingly, Defendant's stated reliance on this release cannot be deemed wholly groundless, and,

11. Regarding Plaintiff's claim that Defendant's disclosure violated the VA's own guidelines for addressing Privacy Act requests, the Court agrees that Defendant's failure to adhere to its own rules is troubling, to say the least. Yet, the Court is aware of no authority, and Plaintiff has not identified any, for the proposition that a violation of internal agency regulations, standing alone, can sustain a claim for damages under the Privacy Act. As explained above, the Court finds no evidentiary support for the proposition that Defendant violated the terms of the statute itself. It is doubtful whether internal guidelines can serve to augment the obligations owed by a federal agency under the Privacy Act, such that a violation of the guidelines alone establishes a violation of the statute.

12. Plaintiff also must establish a causal nexus between Defendant's disclosure and some "adverse effect" he suffered. *See Quinn,* 978 F.2d at 131. Although Defendant argues that this element also is lacking here, the Court need not resolve this question, in light of its conclusions on the other dispositive grounds urged by Defendant.

indeed, likely could not even satisfy a mere negligence standard.

This leaves only the possibility that Defendant did not, in fact, act on the ground of the AATA release, but rather for some improper purpose. The only evidence in the record that could even remotely support such a conclusion is (i) Defendant's arguable failure to ensure that the AATA's request satisfied the agency's internal guidelines, and (ii) Defendant's disclosure of the entire C file, seemingly without any effort to identify those portions that were within the scope of the AATA's request for information. Even under these facts, however, the Court finds that the record simply does not permit the inference that Defendant acted with flagrant disregard for Plaintiff's rights under the Privacy Act. Rather, absent any direct or affirmative evidence of malfeasance or improper motive, the most that could be inferred from the record is that the agency was insufficiently attentive to its own guidelines or to the specific information sought in the AATA's request, and such conduct, akin to mere negligence, does not suffice to satisfy the Act's "intentional or willful" standard for an award of damages.

**D. Plaintiff's Alleged Emotional Injuries, Standing Alone, Cannot Sustain an Award of Damages under the Privacy Act.**

Finally, apart from these other defects in Plaintiff's Privacy Act claim, Defendant contends that Plaintiff has failed to produce evidence of injuries of the sort that would sustain an award of damages under the Act. Again, the Court agrees.

The Privacy Act provides that, in the event of an "intentional or willful" violation, the plaintiff may recover "actual damages sustained by the individual as a result" of the unlawful disclosure, "but in no case shall a person entitled to recovery receive less than the sum of $1,000." 5 U.S.C. § 552a(g)(4)(A).[13] The Sixth Circuit has held that "actual damages under the Privacy Act do not include recovery for mental injuries, loss of reputation, embarrassment or other non-quantifiable injuries." *Hudson v. Reno*, 130 F.3d 1193, 1207 (6th Cir.1997) (Rosen, J., sitting by designation) (internal quotations and citations omitted). Although Plaintiff cites *Romero–Vargas*, 907 F.Supp. at 1134, as adopting a different rule, this Court necessarily is bound to follow the Sixth Circuit's decision over that of another District Court. It follows that Plaintiff's evidence of damages, consisting solely of claimed emotional injuries, does not suffice to establish the "actual damages" element of the statute.

Nevertheless, even absent evidence of actual damages, Plaintiff contends that he is entitled to at least a $1000 minimum award of statutory damages. In *DiMura v. Federal Bureau of Investigation*, 823 F.Supp. 45, 48 (D.Mass.1993), however, the Court considered and rejected this position. The Court reasoned:

Upon examination, this court finds that the better rule is to preclude recovery where, as here, only emotional injuries are alleged. This court bases its decision on language in the Act specifying that the $1,000 statutory minimum damages are to be made available only to "a person entitled to recovery." 5 U.S.C. § 552a(g)(4). To be entitled to recovery under the Act, however, a plaintiff must prove that he or she has suffered "actual damages." This court has determined that plaintiff's claim for emotional damages is not one entitling him to recovery

13. The plaintiff also is entitled to an award of attorney fees and costs. *See* 5 U.S.C. § 552a(g)(4)(B).

under the Act. Given that plaintiff is not "a person entitled to recovery," he is not entitled to the $1,000 statutory minimum damages.

*DiMura,* 823 F.Supp. at 48 (citations omitted). Although there is authority to the contrary, *see, e.g., Fitzpatrick v. Internal Revenue Service,* 665 F.2d 327, 331 (11th Cir.1982), this Court finds that *DiMura'*s construction of the Privacy Act is the better one, and therefore adopts it. Thus, even if Plaintiff had identified an issue of fact as to Defendant's alleged violation of the Privacy Act, he would be unable to satisfy the conditions necessary to permit an award of damages for this violation.

## IV. *CONCLUSION*

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's June 29, 2001 Motion for Summary Judgment is GRANTED.